584 S.E.2d 138

**The STATE, Respondent,**

v.

**Jimmy WILDS, Appellant.**

No. 3668.

Court of Appeals of South Carolina.

Submitted April 18, 2003.

Decided July 21, 2003.

270

272

Assistant Appellate Defender Aileen P. Clare, of SC Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

ANDERSON, J.:

Jimmy Wilds was indicted for assault and battery with intent to kill (ABIK) and petit larceny. The jury found him guilty as charged. The judge sentenced him to twenty years, suspended to eight years with five years probation for ABIK and thirty days concurrent for petit larceny. We affirm.[1]

## *FACTS/PROCEDURAL BACKGROUND*

On October 5, 2000, Wilds and Allen Ladd drove a vehicle to Miller's Country Store to steal gasoline. After the men exited the car, the storeowner, Clarence Miller, and the cashier, Stanley Tuffill, became suspicious and approached the men at the gas pump. Tuffill stood at the front, right corner of the car. Miller was standing at the rear of the car. Wilds entered the driver's side of the car as Ladd "dove in the passenger side of the car." Miller, approaching the driver's side window from the rear, hollered at Wilds, "Are you going to pay for this gas?" When Wilds looked at Miller, Miller showed him the butt of a gun in his pocket. Wilds immediately sped off, running over Tuffill. Tuffill's belt caught in the brake line, and he was dragged under the car about 300 feet before being jarred loose. While Tuffill was under the car, Wilds swerved the car as he accelerated.

In Wilds' voluntary statement that was introduced as evidence at trial, Wilds admitted seeing Tuffill in front of the car, saying, "[Tuffill] never said anything but he walked and stood in front of the car." Wilds acknowledged knowing Tuffill was under the car, "Alan was screaming the dude was under the car, and the next time I saw him was in my rear view mirror when he came out from under the car. I didn't stop . . . ." Lora Radford, a witness who saw the car speeding away from the store, said the men "looked like they were laughing."

At the end of the State's case, Wilds moved for a directed verdict on the ABIK charge. The trial court denied the motion. At the close of evidence, Wilds renewed his motion for a directed verdict. The judge again denied the motion.

---

1. We decide this case without oral argument, pursuant to Rule 215, SCACR.

## STANDARD OF REVIEW

The trial court is concerned with the existence or nonexistence of evidence, not its weight, when ruling on a motion for a directed verdict. *State v. Gaster,* 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002); *State v. Rosemond,* 348 S.C. 621, 626, 560 S.E.2d 636, 639 (Ct.App.2002). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 642, 576 S.E.2d 168, 171 (2003); *State v. Rothschild,* 351 S.C. 238, 243, 569 S.E.2d 346, 348 (2002). The judge should grant a directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. *State v. Schrock,* 283 S.C. 129, 132, 322 S.E.2d 450, 452 (1984); *State v. Horne,* 324 S.C. 372, 379, 478 S.E.2d 289, 293 (Ct.App.1996). However, if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Harris,* 351 S.C. 643, 653, 572 S.E.2d 267, 273 (2002); *State v. Condrey,* 349 S.C. 184, 190, 562 S.E.2d 320, 323 (Ct.App.2002).

When reviewing a denial of a directed verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the State. *State v. Burdette,* 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); *State v. Morgan,* 352 S.C. 359, 364, 574 S.E.2d 203, 205 (Ct.App.2002). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury. *State v. Venters,* 300 S.C. 260, 264, 387 S.E.2d 270, 272–73 (1990); *State v. Patterson,* 337 S.C. 215, 232, 522 S.E.2d 845, 853 (Ct.App.1999).

## LAW/ANALYSIS

Wilds contends the court erred in failing to grant a directed verdict on ABIK based upon the insufficiency of the evidence. Specifically, Wilds argues the State did not offer any evidence that he acted with malice.

## *ASSAULT AND BATTERY WITH INTENT TO KILL*

 ABIK is an unlawful act of a violent nature to the person of another with malice aforethought, either express or implied. *Tate v. State,* 351 S.C. 418, 427, 570 S.E.2d 522, 527 (2002); *Hill v. State,* 350 S.C. 465, 472, 567 S.E.2d 847, 851 (2002); *State v. Tyndall,* 336 S.C. 8, 21, 518 S.E.2d 278, 284–85 (Ct.App.1999). ABIK comprises all the elements of murder except the death of the victim. *State v. Foust,* 325 S.C. 12, 14, 479 S.E.2d 50, 51 (1996); *State v. Glenn,* 328 S.C. 300, 310, 492 S.E.2d 393, 398 (Ct.App.1997); *see* S.C.Code Ann. § 16–3–10 (2003) (" 'Murder' is the killing of any person with malice aforethought, either express or implied."). To be convicted of ABIK, the jury must be satisfied beyond a reasonable doubt that if the victim had died, the defendant would have been guilty of murder. *State v. Sutton,* 340 S.C. 393, 396, 532 S.E.2d 283, 285 (2000); *Glenn,* 328 S.C. at 310, 492 S.E.2d at 398.

### I. GENERAL Intent

 Furthermore, ABIK requires the intent to kill. *State v. Foust,* 325 S.C. 12, 15, 479 S.E.2d 50, 51 (1996); *State v. Coleman,* 342 S.C. 172, 176, 536 S.E.2d 387, 389 (Ct.App. 2000); *State v. Glenn,* 328 S.C. 300, 310, 492 S.E.2d 393, 398 (Ct.App.1997). It is adequate if general intent is established; specific intent is not necessary. *Sutton,* 340 S.C. at 396, 532 S.E.2d at 285; *Foust,* 325 S.C. at 15, 479 S.E.2d at 51; *Coleman,* 342 S.C. at 176, 536 S.E.2d at 389. *Foust* inculcates:

Such intent may be shown by acts and conduct from which a jury may naturally and reasonably infer intent. *See State v. Lyons,* 102 N.C.App. 174, 401 S.E.2d 776 (1991); *Colbert v. State,* 84 Ga.App. 632, 66 S.E.2d 836 (1951). *See also* 41 C.J.S. *Homicide* § 195 (intent may be shown by acts and conduct of accused and other circumstances from which the jury may naturally and reasonably infer intent; evidence of the character of the means or instrument used, manner in which it was used, purpose to be accomplished, resulting wounds or injuries, etc., are admissible to show the intent with which the assault was committed); 41 C.J.S. *Homicide* § 179 (intent to kill may be inferred from the character of the assault, the use of a deadly weapon with an opportunity to deliberate, or the use of a dangerous or

deadly weapon in a manner reasonably calculated to cause death or great bodily harm; intent may be inferred when it is demonstrated that the accused voluntarily and willfully commits an act, the natural tendency of which is to destroy another's life).

325 S.C. at 16 n. 4, 479 S.E.2d at 52 n. 4.

## II. MALICE

Malice is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong. *Tate v. State*, 351 S.C. 418, 426, 570 S.E.2d 522, 527 (2002); *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998); *State v. Johnson*, 291 S.C. 127, 128, 352 S.E.2d 480, 481 (1987). It is the doing of a wrongful act intentionally and without just cause or excuse. *Tate*, 351 S.C. at 426, 570 S.E.2d at 527; *State v. Bell*, 305 S.C. 11, 19, 406 S.E.2d 165, 170 (1991). Malice is defined as a formed purpose and design to do a wrongful act under the circumstances that exclude any legal right to do it. *Hill v. State*, 350 S.C. 465, 472, 567 S.E.2d 847, 851 (2002); *State v. Fennell*, 340 S.C. 266, 275 n. 2, 531 S.E.2d 512, 517 n. 2 (2000). In its legal sense, it does not necessarily "import ill-will toward the individual injured, but signifies rather a general malignant recklessness of the lives and safety of others, or a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief." *Id.; accord State v. Mouzon*, 231 S.C. 655, 662–63, 99 S.E.2d 672, 675–76 (1957). To prove recklessness or negligence, the State is prohibited from relying on the terms' civil concepts; instead the State must look to the meaning of the words as defined in criminal law. *State v. Rowell*, 326 S.C. 313, 317, 487 S.E.2d 185, 187 (1997).

Malice may be either express or implied. "The words 'express or implied' add nothing to the meaning of the word 'malice.' They do not imply different kinds of malice, but merely the manner in which the only kind known to the law may be shown to exist—that is, either by positive evidence or by inference." *State v. Milam*, 88 S.C. 127, 130, 70 S.E. 447, 449 (1911). Express malice is when there is a deliberate intention to unlawfully take the life of another. 40 C.J.S. *Homicide* § 34 (1991). Implied malice is when circumstances demonstrate a "wanton or reckless disregard for human life" or "a reasonably prudent man would have known that accord-

ing to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Id.* at § 35.

Although malice must be aforethought, there is no requirement that it must exist for any appreciable length of time before the commission of the act. *State v. Cooper,* 212 S.C. 61, 66, 46 S.E.2d 545, 547 (1948); *State v. Ballington,* 346 S.C. 262, 272, 551 S.E.2d 280, 285 (Ct.App.2001) (quoting *State v. Fuller,* 229 S.C. 439, 446, 93 S.E.2d 463, 467 (1956)). It may be conceived at the very moment the assault occurs. *Cooper,* 212 S.C. at 66, 46 S.E.2d at 547 (quoting *Milam,* 88 S.C. at 131, 70 S.E. at 449).

## Permissive Inference of Malice

The use of a deadly weapon gives rise to a permissive inference of malice. *State v. Kelsey,* 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998); *State v. Von Dohlen,* 322 S.C. 234, 248, 471 S.E.2d 689, 697 (1996); *State v. Mattison,* 276 S.C. 235, 238, 277 S.E.2d 598, 600 (1981). In South Carolina, an automobile is regarded as a dangerous instrumentality. *Yaun v. Baldridge,* 243 S.C. 414, 419, 134 S.E.2d 248, 251 (1964); *State v. Caldwell,* 231 S.C. 184, 188, 98 S.E.2d 259, 261 (1957); *State v. Sussewell,* 149 S.C. 128, 145, 146 S.E. 697, 703 (1929); *In re McFadden,* 112 S.C. 258, 261, 99 S.E. 838, 839 (1919). The jury may draw an inference of malice from proof of the use of a deadly weapon if it concludes such is proper after considering all of the facts and circumstances in evidence. *Mattison,* 276 S.C. at 239, 277 S.E.2d at 600. In a charge to the jury, the judge should make clear to the jury that it is free to accept or reject the permissive inferences depending on its view of the evidence. *State v. Peterson,* 287 S.C. 244, 247, 335 S.E.2d 800, 802 (1985), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991); *see State v. Pilgrim,* 320 S.C. 409, 415 n. 3, 465 S.E.2d 108, 112 n. 3 (Ct.App.1995) ("While the evidence in this case may give rise to an inference the attack was committed with malice and intent to kill, the inference is a permissive one which the jury is free to accept or reject."), *overruled on other grounds by State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996). The supreme court has enunciated a proper jury charge:

The law says if one intentionally kills another with a deadly weapon, the implication of malice may arise. If facts, are

proved beyond a reasonable doubt, sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive.

*State v. Elmore,* 279 S.C. 417, 421, 308 S.E.2d 781, 784 (1983), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). The court cautioned the Bench that only slight deviations from the given charge would be acceptable. *Id.*

Viewing the evidence and all reasonable inferences in the light most favorable to the State, we find that the jury could infer that Wilds acted with malice aforethought. Because an automobile has been deemed a dangerous instrumentality, the jury was allowed to draw a permissive inference of malice. Furthermore, Wilds, in his statement, declared seeing Tuffill standing in front of his car before he drove away. Evidence was presented that Wilds was swerving while accelerating and laughing as Tuffill was dragged underneath the automobile.

## CONCLUSION

We find the judge did not err in failing to grant a directed verdict. Accordingly, the judgment of the circuit court is

**AFFIRMED.**

CURETON and HUFF, JJ., concur.